UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CAROLYN HULL, *on behalf of herself and all others similarly situated*, *et al.*<br>    Plaintiffs,<br><br>        v.<br><br>SYLVIA BURWELL, *Secretary of Health and Human Services*,<br>    Defendant. | No. 3:14-cv-00801 (JAM) |

**RULING GRANTING DEFENDANT'S MOTION TO DISMISS**

This case poses an important issue of constitutional standing to maintain a federal court action. The question is whether a Medicare patient has standing if Medicare denies a healthcare claim but then Medicaid—a separate government health program—ends up paying the claim. In such circumstances, I conclude that there has been no redressable injury-in-fact to allow the patient to raise a challenge in federal court to Medicare's handling or denial of her claim.

**BACKGROUND**

Plaintiffs are five elderly women from Connecticut who are homebound with serious medical conditions. Each plaintiff received home healthcare services on various dates from 2011 to 2013. Medicare declined to pay.

Plaintiffs' complaint is not about the particulars of why each of their claims was denied. Instead, they seek to challenge what they believe to be a "rigged" process that the Medicare administrators at the U.S. Department of Health and Human Services (HHS) have been using since 2006 to review claims. As plaintiffs describe it, after coverage for home healthcare services is initially declined, the denial-review process may include up to four stages: (1) "a paper-review redetermination by the contractor that made the initial determination" to deny coverage, (2)

followed by "a paper-review reconsideration carried out by a separate entity that contracts with" HHS to conduct such reviews, (3) followed by "a hearing before an ALJ" or administrative law judge, and (4) finally followed by a "paper review by the Medicare Appeals Council." Doc. #1 at 7 (Compl. ¶ 28).

Based on extensive statistics compiled by plaintiffs' counsel from the Center for Medicare Advocacy, plaintiffs allege that this review process is hardly a review process at all—that it results in about 98% of initial adverse determinations being affirmed through the first two "paper" review stages of the process and that beneficiaries must take their claims to the third level of review for a hearing before an ALJ to have any realistic chance of coverage. But, as plaintiffs describe it, "[m]ost beneficiaries do not have the time, resources, or advocacy support to take their claims to the ALJ level," and so "[a]s a practical matter, therefore, the second level of review . . . operates as the final decision of the Secretary [of HHS] and invariably is adverse." Doc. #1 at 2 (Compl. ¶ 4). Now seeking to represent a class of Medicare beneficiaries in Connecticut, plaintiffs claim that the "defective administrative review process" violates the Medicare statute and the Due Process Clause of the Fifth Amendment. *Id.* (Compl. ¶ 5).

The defendant is the Secretary of HHS, and she has moved to dismiss plaintiffs' claims, principally on the ground that plaintiffs lack standing. According to defendant, plaintiffs have not sustained a redressable injury-in-fact because their Medicare claims have been separately and fully paid by a different payor—the Medicaid program.

DISCUSSION

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The reason for a case-or-controversy limitation is to restrain the federal courts from enmeshing themselves in deciding abstract and advisory

questions of law. Accordingly, any federal court plaintiff must have case-or-controversy "standing" to assert a claim—specifically, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (some internal quotation marks omitted)); *see also E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 449–50 (2d Cir. 2014).

The first requirement—that a plaintiff have sustained an injury-in-fact—"helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List*, 134 S. Ct. at 2341 (citing *Warth v. Seldin,* 422 U.S. 490, 498 (1975) (internal quotation marks omitted)). An injury-in-fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Ibid* (some internal quotation marks and citations omitted); *E.M.*, 758 F.3d at 449.

Plaintiffs here bear the burden of establishing standing. *Susan B. Anthony List*, 134 S. Ct. at 2342. Moreover, for class action lawsuits, "the named class plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *Warth*, 422 U.S. at 502).

The Medicare program is a government health insurance program primarily for the elderly, while the Medicaid program is a government health insurance program for needy people of any age with modest incomes. *See generally Cmty. Health Care Ass'n of New York v. Shah*, 770 F.3d 129, 135 (2d Cir. 2014); *Connecticut Dep't of Soc. Servs. v. Leavitt*, 428 F.3d 138, 141

(2d Cir. 2005). Those who are both elderly and poor may be "dually eligible" to receive benefits under both programs. *Ibid.*

The Medicare and Medicaid programs are administered and financed differently. Medicare is administered and financed entirely by the federal government through HHS; by contrast, Medicaid is principally administered by state governments subject to federal guidelines, and state governments roughly split the costs with the federal government for services provided under the Medicaid program. *Ibid*. In Connecticut, Medicaid is administered by a state agency—the Connecticut Department of Social Services (DSS). *Ibid.*

For home healthcare benefits that are provided to dual-eligible persons like plaintiffs in this case, Medicare is supposed to be the payor of first resort, while Medicaid is a payor of last resort. *Ibid.* Although Medicaid may choose to pay a claim that Medicare has denied, state governments have an obvious incentive to have Medicare pay claims rather than Medicaid, for which the states must shoulder a significant portion of the costs. *Id.* at 142. When a state pays a claim under Medicaid that the federal government has denied under Medicare, the state may seek recoupment from the federal government by availing itself of the Medicare denial-of-benefits review process, and the state then acts as a statutory subrogee of the patient beneficiary. *See* 42 U.S.C. § 1396k(a)(1); *New York State Dept. of Soc. Servs. v. Bowen*, 846 F.2d 129 (2d Cir. 1988); 42 C.F.R. § 405.908.

And that is what has happened for the claims of each of the plaintiffs in this lawsuit: Medicaid has covered the claims, and the DSS in turn has invoked the denial-of-claim review process seeking to recoup its expenses from Medicare. Apparently, this review is still ongoing. Although each of the plaintiffs may technically be "parties" to the review process, it is the DSS— which has *not* been named a party to or sought to intervene in this lawsuit—that has

initiated and controls the litigation of the administrative review process to seek recoupment from the Medicare program for services that Medicaid has already paid. None of the plaintiffs has had to take part in the administrative review process, and plaintiff's counsel at oral argument was unable to identify any manner in which plaintiffs have been otherwise inconvenienced or adversely affected by the ongoing review proceedings.

A plaintiff has no constitutional injury-in-fact that would allow her to complain in federal court when her "injury" consists solely of a financial liability that has been paid for in full by a third party (such as an insurance company), absent a showing of some residual or collateral harm to the plaintiff (such as an increase in insurance rates or other inconvenience due to litigation). Thus, for example, in *Pittston Stevedoring Corp. v. Dellaventura*, 544 F.2d 35, 45–46 (2d Cir. 1976), *aff'd sub nom. Ne. Marine Terminal Co. v. Caputo*, 432 U.S. 249 (1977), the Second Circuit concluded that an employer had no redressable injury to contest an administrative award of workers compensation benefits to an employee after the employer's insurance company had opted to pay the claim without further contesting the matter. Judge Friendly wrote that "where the issue of liability is determined against an insured and its insurer, and the insurer pays the damages in full even without the consent of the insured and chooses not to appeal, the insured cannot appeal from the judgment against him." *Id.* at 46. Nor was there any residual or collateral harm to the employer, because the employer had "submitted nothing but conclusory assertions of adverse effect on future premiums" from the insurance company's payment of a single claim. *Id.* at 45.

The same holds true here, where a payor or insurer (such as the DSS through the Medicaid program) has satisfied each of the claims on behalf of plaintiffs. Because the Medicaid payor has assumed all of plaintiffs' liability but not joined in this court action, plaintiffs

5

themselves have no standing to maintain this action.[1] *See also Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994) (no standing for insured auto-accident party to pursue payment from private insurance company for healthcare expenses already paid on her behalf by Medicare; plaintiff "pleads that [her insurance company] wronged, but did not injure her" and plaintiff "never has had anything to gain from this lawsuit").

Plaintiffs have not identified any other concrete or imminent harm that might establish standing. They allege in their complaint that "in certain circumstances" the estates of Medicaid beneficiaries may be subject to claims for repayment of funds expended by Medicaid. Doc. #1 at 10 (Compl. ¶ 46) (citing 42 U.S.C. § 1396p(b)); *see also State v. Marks*, 239 Conn. 471, 686 A.2d 969 (1996). But plaintiffs did not pursue this claim in their briefing or at oral argument. And it is far from clear that the estates of any of the five plaintiffs at issue in this case will be sizeable enough to be subject to any future claim from the DSS, much less to a claim for the specific homecare benefits at issue in this case.[2]

Plaintiffs contend that they "are threatened with future injury because the denial of services in this case creates a presumption for subsequent coverage issues that they have knowledge that the services will not be covered," and that by statute "[t]his presumed knowledge deprives them of having future liability for services waived in the event of insufficient notice from the provider." Doc. #28 at 15 (citing 42 U.S.C. § 1395pp(b)). At least one court has found this argument to be persuasive. *See Anderson v. Sebelius*, 2010 WL 4273238, at *4 (D. Vt. 2010)

---

[1] As the government conceded at oral argument, the same conclusion would not follow had any of the named plaintiffs been eligible only for Medicare but not Medicaid. In light of the fact that plaintiffs seek to represent a class of Medicare beneficiaries (and not just dual-eligible Medicare/Medicaid beneficiaries), it is curious and unclear why no Medicare-only beneficiaries were named as plaintiffs in this case.

[2] Not to the contrary is dicta from the Second Circuit's decision in *Connecticut Dep't of Soc. Servs.*, in which it stated that "dual eligibles care whether Medicare or Medicaid pays for their home health-care services because if Medicaid pays and is not reimbursed, Connecticut may levy against their estates for the cost of services provided while they were living." 428 F.3d at 142. The Second Circuit did not further conclude that this interest categorically suffices to establish standing.

(plaintiff denied Medicare benefits had "injury-in-fact because she will be presumed to have knowledge that the denied services will not be covered in the future and will thus be legally bound to her detriment by the outcome of [her] case").

But I cannot agree that these circumstances suffice to establish standing. The predicted harm is wholly contingent upon the future acts or omissions of third parties—that a home healthcare provider might one day fail to give plaintiffs sufficient notice of a claim and, in turn, that Medicare administrators will decide that plaintiffs should be barred by reason of prior denials from contesting a future denial of the claim. As the Supreme Court has recently noted, "we have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1144 (2013) (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Thus, the Supreme Court has made clear that a "theory of standing" that "relies on a highly attenuated chain of possibilities[ ] does not satisfy the requirement that threatened injury must be certainly impending," *id.* at 1148, and it has also noted its "usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.* at 1150.

Plaintiffs further insist that—like all Medicare beneficiaries—they have paid into the Medicare insurance system and therefore have an entitlement to have Medicare pay their claims as Medicare is required to do by statute. *See* Doc. #28 at 12 (citing 42 U.S.C. § 1395y(a)(1)(A)); *see also* 42 U.S.C. §§ 1395d(a), 1395k(a). But this argument incorrectly assumes that the violation of any statutory right automatically confers standing without regard to whether a plaintiff has actually been injured, much less whether a court order would redress that injury. *See, e.g.*, *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009)

(plaintiff "cannot claim that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of her entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing"). Plaintiffs have alleged at best an injury-in-*law*, not an injury-in-*fact*.

In *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), the Supreme Court made clear that "[i]t would exceed Article III's limitations if, at the behest of Congress and in the absence of any showing of concrete injury, we were to entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws," and that "[t]he party bringing suit must show that the action injures him in a concrete and personal way." *Id.* at 497 (internal quotation marks and citation omitted). Thus, the Court noted that "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Id.* at 497.[3]

I have considered recent precedent of the Second Circuit that grapples with standing in the context of claims of statutory entitlement. For example, in *E.M. v. New York City Dept. of Educ.*, 758 F.3d at 442, the court of appeals addressed whether a parent had standing to seek relief for a violation of the federal statutory right to a free appropriate public education in circumstances where the parent had placed her child at a private school and where the parent sought to require the government to pay the private school expense. The government contended that the parent had no standing because the private school had borne the tuition expense. The

---

[3] Plaintiffs misplace their reliance on *Massachusetts v. E.P.A.*, 549 U.S. 497 (2007), in which the Supreme Court stated that "[w]hen a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.* at 518. In that case, it was clear that plaintiffs had alleged an actual injury-in-fact to coastland harmed by rising waters from climate change, *id.* at 522–23, and the Court's discussion of standing in the procedural-right context related to the separate "redressability" requirement for standing: that there be "some possibility" that the requested relief (for an order to require the EPA to engage in rulemaking to regulate greenhouse gases) would "prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.* at 518 (citing *Lujan*, 504 U.S. at 572 n.7); *see also WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013) (noting that "we relax the redressability and imminence requirements for a plaintiff claiming a procedural injury" but that the injury-in-fact requirement remains and that "[a] procedural injury claim therefore must be tethered to some concrete interest adversely affected by the procedural deprivation").

court of appeals declined to decide whether standing could be predicated alone on the allegation of the violation of the right to receive a free appropriate public education. *E.M.*, 758 F.3d at 456. Instead, the court decided the case on "a narrower ground" and concluded that the parent had standing because she faced possible contractual liability to the private school. *Id.* at 456–60. Here, by contrast, there has been no showing that plaintiffs face potential financial liability for the services they have received.

Equally distinguishable is the Second Circuit's decision in *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2388 (2013). There, the Second Circuit concluded that a stock issuer would have a constitutional injury-in-fact as a result of an investor's violation of a statutory fiduciary prohibition of the securities laws against certain investors' engaging in short-swing trading of the issuer's shares; the statutory remedy was disgorgement of the profits from the short-swing trading activity. Despite the fact that the issuer could not show that it had suffered specific harm from the investor's short-swing trading activity, the court of appeals concluded that the statute "created legal rights that clarified the injury that would support standing, specifically, the breach by a statutory insider of a fiduciary duty owed to the issuer not to engage in and profit from any short-swing trading of its stock." *Id.* at 180. Here, by contrast, the Medicare statute is not an "injury-clarifying" statute. Nor did *Donoghue* involve a third-party payment or similar conduct that redressed the harm to the issuer that Congress had designed the statute to prevent.

Plaintiffs also point to other district court decisions that have recognized standing for dual-eligible plaintiffs to contest a denial of Medicare benefits notwithstanding payment of the same claim by Medicaid. *See Longobardi v. Bowen*, 1988 WL 235576, at *2 (D. Conn. 1988); *Martinez v. Bowen*, 655 F. Supp. 95, 99 (D.N.M. 1986). These decisions are not persuasive.

They are inconsistent with modern standing precedent of the Supreme Court because they rely on a notion that standing may be founded on no more than an abstract "entitlement" right created by statute without focus on whether a plaintiff has sustained a practical, concrete injury from the claimed violation of the statutory right. *See also Estate of Lake v. Sec'y of HHS*, 1989 WL 200974 at *1, *2 (D.N.H. 1989) (Medicare plaintiff had no standing because "she was completely indemnified of liability and did not suffer any out-of-pocket loss" and she "received home nursing care until her death without incurring any economic injury").

In short, none of the five plaintiffs has sustained an injury-in-fact. They received the home healthcare that they allege they needed. Notwithstanding Medicare's denial of coverage, they paid nothing for their home healthcare because Medicaid came to the rescue. They face no likelihood of future claims or other collateral consequences against them as a result of the fact that Medicare denied their claims.

At best, plaintiffs allege that they have been legally wronged but have not shown themselves to be factually injured. Having received the healthcare they needed, their real claim of injury is that the government paid for it from one entitlement account (Medicaid) rather than from another entitlement account (Medicare). I decline to conclude that an injury-in-fact arises whenever the government may pay benefits but does so from a source or account that is not to a beneficiary's liking.

True enough, questions may well persist about whether Medicare should have paid the claims in the first instance or whether Medicare's denial-review procedures are fair. But for the named plaintiffs in this case, that is now Medicaid's battle to fight with Medicare, and plaintiffs have nothing at stake in any ongoing dispute between the Medicaid and Medicare bureaucracies. Plaintiffs have no standing.

## CONCLUSION

Defendant's motion to dismiss for lack of standing (Doc. #13) is GRANTED.

It is so ordered.

Dated at Bridgeport this 8th day of December 2014.

                                                  /s/     Jeffrey Alker Meyer
                                                        Jeffrey Alker Meyer
                                                        United States District Judge

Case 3:14-cv-00801-JAM Document 34 Filed 12/08/14 Page 11 of 11